UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| NORMAN LEE GUNN,<br><br>Plaintiff,<br><br>vs.<br><br>KIPP STEARNS, in his individual and official capacity as Deputy Sheriff; KATELYNN B. HOFFMAN, in her individual and official capacity as Turner County District Attorney; and HONORABLE DONNA L. BUCHER, in her individual and official capacity as Judge Jointly and Severely,<br><br>Defendants. | 4:25-CV-04034-ECS<br><br><br>OPINION AND ORDER GRANTING MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS, DENYING MOTION TO APPOINT COUNSEL, AND § 1915 SCREENING |

The plaintiff, Norman Lee Gunn, filed a pro se lawsuit under 42 U.S.C. §§ 1983, 1985, and 12203(a). Doc. 1. His Complaint alleges state-law claims under SDCL §§ 20-9-6 and 20-9-32. Id. Gunn sued each defendant in both their individual and official capacities. Id. at 1. Gunn moves for leave to proceed in forma pauperis, Doc. 2, and for appointment of counsel, Doc. 3.

## I.    Motion for Leave to Proceed In Forma Pauperis

A federal court may authorize the commencement of a lawsuit without prepayment of fees when a litigant submits an application to proceed in forma pauperis and includes an affidavit stating that he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." Lee v. McDonald's Corp., 231 F.3d 456, 459 (8th Cir. 2000). But in forma pauperis status is a privilege, not a right. Williams v. McKenzie, 834 F.2d 152, 154 (8th Cir. 1987). Determining

1

whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court. Cross v. Gen. Motors Corp., 721 F.2d 1152, 1157 (8th Cir. 1983). Gunn's financial affidavit shows that he has insufficient funds to pay the filing fee. Thus, his motion for leave to proceed in forma pauperis, Doc. 2, is granted.

## II.    1915 Screening

### A.    Factual Background as Alleged by Gunn

On September 12, 2023, Turner County Deputy Sheriff Kipp Stearns[1] pulled Gunn over for driving without a license plate on his vehicle. Doc. 1 at 2. Once stopped, Gunn exited his vehicle to ascertain why he had been pulled over. Id. Gunn claims that Deputy Stearns then grabbed his arm, twisted it behind his back and handcuffed him. Id. Deputy Stearns ultimately issued Gunn a traffic citation for driving without a license plate in violation of SDCL § 32-5-98. Id. About two weeks later, Deputy Stearns pulled Gunn over a second time for failing to display a license plate on his vehicle. Id. Again, Deputy Stearns issued Gunn a citation. Id. But this time, he also impounded Gunn's vehicle. Id. at 2–3. Gunn had left his pistol in the vehicle, which Gunn claims was "seized by another deputy without a warrant or any exception to" the warrant requirement. Doc. 6 at 1.

Sometime later, Gunn appeared before Judge Donna L. Bucher for a hearing on the first traffic citation. Doc. 1 at 2. Gunn asserts that before the hearing Turner County State's Attorney Katelynn Hoffman ("SA Hoffman") sent him "a letter threatening [him] with a crime if [he] did not capitulate to her demands to plead guilty to the above mentioned citations." Id. After Gunn

---

[1] At various points throughout his Complaint, Gunn also refers to a "Deputy Kearns." Doc. 1 at 3. For purposes of this screening order, this Court will assume that any reference to "Kearns" was simply Gunn misspelling "Stearns."

refused to enter a plea, Judge Bucher "entered a plea of not guilty for [him]." Id. Gunn alleges that after the hearing, SA Hoffman told Judge Bucher, "Don't worry we'll get him the next time." Id. Ultimately, Gunn was not prosecuted on the first citation. Doc. 6 at 2.

Gunn later appeared before the court on his second citation. Id. Again, he refused to enter a plea. Id. Gunn states that "the Court threatened [him] with contempt of court if he did not plead[.]" Id. Gunn asserts that, in the end, "[t]he Court entered a plea for [him]." Id. Gunn states that not long after this hearing, SA "Hoffman sent [Gunn] a letter wanting [him] to take a plea deal." Id. After he declined to take SA Hoffman's plea deal, Gunn alleges that SA Hoffman threatened to file criminal charges against him. Id. A case with the file number 62POA.23-208 was later filed against him. Id.

On January 8, 2024, Gunn received a letter from the Turner County Court notifying him that all charges, including those in case number 62POA.23-208, had been dismissed. Id. Gunn states that the Sheriff's Department refused to return his vehicle, even after SA Hoffman dismissed all the pending charges. Doc. 1 at 3. Gunn claims that "[i]t took a phone call from Defendant Hoffman to effectuate the release of [his] vehicle." Id. Gunn asserts that his car was impounded for a total of 111 days. Id.

### B.    Legal Standard

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis, the court must then screen the complaint under 28 U.S.C. § 1915(e)(2)(B). Martin-Trigona v. Stewart, 691 F.2d 856, 857 (8th Cir. 1982) (per curiam); see also Key v. Does, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). This Court must dismiss claims if they "(i) [are] frivolous or malicious; (ii) fail[] to state a claim on which relief may be granted; or (iii) seek[]

monetary relief against a defendant who is immune from such relief." 28 U.S.C.
§ 1915(e)(2)(B).

A court when screening under § 1915 must assume as true all facts well pleaded in the
complaint. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights
complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)
(citation omitted); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation
omitted). Even with this liberal construction standard, "a *pro se* complaint must contain specific
facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985)
(citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013)
(per curiam). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151,
152 (8th Cir. 1993) (per curiam); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per
curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than
labels and conclusions, and a formulaic recitation of the elements of a cause of action will not
do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation modified). When a
complaint does not meet these bare essentials, dismissal is appropriate. See Beavers v. Lockhart,
755 F.2d 657, 663–64 (8th Cir. 1985). Twombly requires that a complaint's "[f]actual
allegations must be enough to raise a right to relief above the speculative level on the assumption
that all the allegations in the complaint are true." 550 U.S. at 555 (citation modified); see also
Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a
complaint "must contain either direct or inferential allegations respecting all material elements
necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553–
63)). And "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual

4

proof of the facts alleged is improbable, and that recovery is very remote and unlikely." Braden
v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citation modified).

### C.    Legal Analysis

#### 1.    Section 1983 Claims

##### a.    Official Capacity Claims Against Deputy Stearns and SA Hoffman

"A suit against a government officer in his [or her] official capacity is functionally
equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran
Home, 627 F.3d 1254, 1257 (8th Cir. 2010). "[A] local government may not be sued under
§ 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs.,
436 U.S. 658, 694 (1978) (holding that local government entities are not liable for acts of its
employees under the theory of respondent superior). "To establish [governmental] liability
under § 1983, a plaintiff must show that a constitutional violation was committed pursuant to an
official custom, policy, or practice of the governmental entity." Moyle v. Anderson, 571 F.3d
814, 817 (8th Cir. 2009) (citing Monell, 436 U.S. at 690–92). A municipal government may be
sued only "when execution of a government's policy or custom, whether made by its lawmakers
or by those whose edicts or acts may fairly be said to represent official policy," deprives a
plaintiff of a federal right. Monell, 436 U.S. at 694; see also Clay v. Conlee, 815 F.2d 1164,
1170 (8th Cir. 1987) (finding that "the [governmental] entity's official 'policy or custom' must
have 'caused' the constitutional violation" in order for that entity to be liable under § 1983).

A § 1983 complaint does not need to "specifically plead the existence of an
unconstitutional policy or custom to survive a motion to dismiss." Crumpley-Patterson v. Trinity
Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004) (citing Doe ex rel. Doe v. Sch. Dist., 340 F.3d
605, 614 (8th Cir. 2003)). But the complaint must include some allegation, reference, or

5

language that creates an inference that the conduct resulted from an unconstitutional policy or custom. Id.; see also Doe, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom."). To establish local governmental liability premised on an unofficial custom rather than an official policy, a plaintiff must allege facts to support a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" and "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct[.]" Brewington v. Keener, 902 F.3d 796, 801 (8th Cir. 2018) (quoting Corwin v. City of Indep., 829 F.3d 695, 700 (8th Cir. 2016)).

Here, Gunn alleges that Defendants violated various constitutional rights and federal statutes, but he does not allege any facts indicating that Defendants' actions were taken in accordance with any unconstitutional policy or custom of the county. Thus, Gunn's official capacity claims against Deputy Stearns and SA Hoffman under § 1983 are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### b.    Official Capacity Claims Against Judge Bucher

Gunn also sues Judge Bucher in her individual and official capacities. Doc. 1 at 1. Magistrate judges are employees of the State of South Dakota. S.D. Const. art. V § 3; SDCL § 16-12B-1.3. Because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office[,]" Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)), Gunn's official capacity claims against Judge Bucher are treated as claims against the State of South Dakota. Id. ("As such, it is no different than a suit against the State itself."). The Eleventh

6

Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. Id. at 66. Here, Gunn seeks money damages, and the State of South Dakota has not waived its sovereign immunity. Thus, Gunn's claims against Judge Bucher in her official capacity for money damages are dismissed with prejudice under 28 U.S.C § 1915(e)(2)(B)(iii).

As to Gunn's claims for equitable relief against Judge Bucher in her official capacity, he "prays this Court award all amicable and equitable relief this Court deems reasonable and necessary to make [him] whole again, including costs." Doc. 1 at 4. He does not clarify what equitable relief he seeks. See generally id. "Because [plaintiff] does not clarify what injunctive relief he seeks, his official capacity claims for injunctive relief . . . are not specific to the claim alleged and relief sought." Christians v. Hanvey, 4:23-CV-04137-LLP, 2024 WL 4241839, at *12 (D.S.D. Sept. 19, 2024); see also Williams v. Cnty. of Scotts Bluff, No. 7:05CV5018, 2005 WL 3159661, at *9 (D. Neb. Nov. 28, 2005) (holding when ruling on a motion to strike that "[i]f the plaintiff has a specific request for equitable relief, it should be alleged, thereby affording the defendants notice and the opportunity to respond. A general request for equitable relief should be stricken."); Pharm. Rsch. & Mfrs. of Am. v. Williams, 64 F.4th 932, 940 (8th Cir. 2023) (holding that standing requires that a plaintiff can only seek relief that could remedy the pleaded injury (citing Sch. of the Ozarks, Inc. v. Biden, 41 F.4th 992, 1001 (8th Cir. 2022))). Thus, Gunn's official capacity claims against Judge Bucher for equitable relief are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).[2]

---

[2] In Gunn's Memorandum of Authorities, he asks that this Court strike down the licensure statute and review prior state actions involving similar cases. Doc. 6 at 12. Gunn generally alleges that the licensure statute is unconstitutional because he believes that requiring

### c.    Individual Capacity Claims

#### i.    Traffic Stop

Gunn argues that Deputy Stearns pulled him over, issued a traffic citation, and impounded his vehicle without probable cause that any crime had been committed. Doc. 1 at 2. In so arguing, Gunn does not claim that he displayed a license plate. Id. Rather, he asserts that under "U.S. Supreme Court decisions a natural individual driving his or her personal vehicle is not required to have license plates on their vehicles, or possess a driver's license to operate their personal vehicles on streets, highways, or interstate travels nationwide." Id.

"Under the Fourth Amendment, a traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." United States v. Carter, No. 17-141, 2017 U.S. Dist. LEXIS 169770, at *10 (D. Minn. Sept. 20, 2017) (quoting United States v. Walker, 840 F.3d 477, 483 (8th Cir. 2016)), adopted by 2017 U.S. Dist. LEXIS 169372 (D. Minn. Oct. 12, 2017). "Probable cause to conduct a traffic stop exists when an officer has an objectively reasonable basis to believe the driver has committed a traffic violation." United States v. Mendez, 21-50024-JLV, 2022 WL 1165727, at *9 (D.S.D. Apr. 20, 2022) (citing United States v. Gordon, 741 F.3d 872, 876 (8th Cir. 2013)). Yet, "[a]ny traffic violation, however minor, provides probable cause for a traffic stop." Id. (quoting United States v. Adler, 590 F.3d 581, 583 (8th Cir. 2009)).

---

license plates generally is unconstitutional, and not because any language particular to South Dakota's statute is unconstitutional. Because courts have held that requiring license plates does not inherently violate the Constitution, see supra at 8–12, Gunn has not clearly stated a claim that would entitle him to such relief. Further, to the extent that he seeks injunctive relief requiring this Court to review prior state actions, he has not stated a claim that would entitle him to such relief, and he as a pro se plaintiff cannot assert claims seeking this Court's review on behalf of others. See Monroe v. Yankton Sioux Hous. Auth., 4:25-CV-04113-ECS, 2025 WL 1795824, at *1 (D.S.D. June 30, 2025). Thus, even if this Court were to liberally construe these as requests for relief, Gunn, as a matter of law, is not entitled to the relief he seeks.

"States have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles, that these vehicles are fit for safe operation, and hence that licensing, registration, and vehicle inspection requirements are being observed." Delaware v. Prouse, 440 U.S. 648, 658 (1979); Kansas v. Glover, 589 U.S. 376, 381 (2020). "License plates originated solely as a means of identifying vehicles." Walker v. Tex. Div., Sons of Confederate Veterans, Inc., 576 U.S. 200, 223 (2015) (Alito, J., dissenting). States then "began requiring automobiles to display registration numbers on license plates[.]" Gilliam v. Gerregano, ---S.W.3d ----, 2025 WL 617603, at *8 (Tenn. 2025) (citing Walker, 576 U.S. at 223). Today, a "license plate is a government article serving the governmental purpose of vehicle registration and identification." Walker, 576 U.S. at 212; United States v. Ellison, 462 F.3d 557, 561 (6th Cir. 2006) ("The very purpose of a license plate number . . . is to provide identifying information to law enforcement officials and others."); United States v. Hensel, 509 F. Supp. 1376, 1386 (D. Me. 1981) ("The purpose of States requiring the owners of motor vehicles to display license plates is to enable law enforcement officers to see them and to identify the vehicle and its owner."); Mason v. Clear Creek Cnty. Sheriff, No. 14-cv-01917, 2014 WL 4099326, at *5 (D. Colo. Aug. 20, 2014) (stating that "Plaintiff cannot argue there is no legitimate governmental interest in requiring license plates on cars"); see also United States v. Smith, 694 F. Supp. 2d 1242, 1255 (M.D. Ala. 2009); United States v. Garrido-Santana, 360 F.3d 565, 573 (6th Cir. 2004). And states have "an important right and responsibility to regulate motor vehicles and that essential to this regulatory effort is the issuance of license plates evidencing the registration of the vehicle and its compliance with safety and insurance requirements." Sons of Confederate Veterans, Inc., v. Comm'r of Va. Dep't of Motor Vehicles, 305 F.3d 241, 248 (4th Cir. 2002) (Niemeyer, J., dissenting).

9

To protect these interests, South Dakota requires drivers to conspicuously display two

license plates:

> Except as otherwise specifically provided, no person may operate or drive a motor
> vehicle on the public highways of this state unless the vehicle has a distinctive
> number assigned to it by the department, and two number plates, bearing the
> number conspicuously displayed, horizontally and in an upright position, one on
> the front and one on the rear of the vehicle, each securely fastened. The plates shall
> at all times, as far as is reasonably possible, be kept clear and free of mud, ice, or
> snow so as to be clearly visible. All number plates, markers, or stamps evidencing
> registration or licensing of any vehicle in this or any foreign state, territory, district,
> or possession and any plate, marker, or stamp used in substitution for or in lieu of
> the number plates required by this section by virtue of any law or executive order
> for any prior year or years shall be removed from such vehicles. . . . A violation of
> this section is a Class 2 misdemeanor.

SDCL § 32-5-98.

Here, Gunn does not dispute that he was driving without a license plate. His only

argument as to why Deputy Stearns lacked probable cause of a crime is that no crime had been

committed. In Gunn's eyes, a natural person "driving his or her personal vehicle is not required

to have license plates[.]" Doc. 1 at 2. As explained above, that is not the case. Because Gunn

does not dispute that he was driving without a license plate and doing so is a violation of South

Dakota's traffic laws, Deputy Stearns had probable cause in each instance to conduct a traffic

stop and issue a citation. Thus, Gunn's Fourth Amendment claim is dismissed without prejudice

for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

## ii. Right to Travel

Gunn further argues that Defendants deprived him of his fundamental right to travel by

enforcing South Dakota's license plate law. He argues that "South Dakota's Motor Vehicle

statutes are designed to raise revenue and convert a right into a privilege and then charge a fee

for it." Doc. 6 at 6. Gunn appears to be arguing that the right to travel on public highways in

one's own vehicle is a God-given right and that state laws enforcing licenses, registration, and

10

insurance infringes upon that right. This argument resembles those associated with the

Sovereign Citizen Movement. See United States v. Svoboda, 633 F.3d 479, 481, 483 (6th Cir.

2011) (describing plaintiff's belief that the right to travel is "God given" was derived from the

"Sovereign Citizens Movement").

To be sure, "[t]he United States Supreme Court recognizes the freedom to travel as a

basic constitutional right." Collins v. City of Wichita, No. 22-3135-SAC, 2022 WL 2791170, at

*2 (D. Kan. July 15, 2022). But "[t]his federal guarantee of interstate travel . . . protects

interstate travelers against two sets of burdens: 'the erection of actual barriers to interstate

movement' and 'being treated differently' from intrastate travelers." Id. (alteration in original)

(quoting Bay v. Alexandria Women's Health Clinic, 506 U.S. 263, 276–77 (1993)). This right,

however, does not exempt individuals from complying with a state's licensing and registration

requirements. "[T]he Supreme Court also has held that states may constitutionally regulate the

use of public roads by licensing drivers and that '[a]ny appropriate means adopted by the states

to insure competence and care on the part of its licensees and to protect others using the highway

is consonant with due process.'" Id. (second alteration in original) (quoting Reitz v. Mealey, 314

U.S. 33, 36 (1941), overruled on other grounds, Perez v. Campbell, 402 U.S. 637 (1971)).

Gunn argues that his liberty interest in traveling has been impaired by Deputy Stearns's

enforcement of South Dakota's law requiring drivers to display a license plate on their vehicle.

This allegation fails to state a claim that the government violated his right to travel. "The right to

travel protects how a citizen in a state is treated by the government compared to other citizens in

that same state or another state." Liviz v. Baker, No. 19-10304-WGY, 2019 WL 764796, at *2

(D. Mass. Feb. 21, 2019); see also Collins, 2022 WL 2791170, at *2. Gunn has not alleged any

action taken by Deputy Stearns that restricts his right to travel or that treats him differently than

11

other South Dakota residents or citizens of another state. As such, Gunn's right to travel claim against Defendants is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### iii.    Impounded Vehicle

Gunn also argues that Defendants deprived him of Due Process when they impounded his vehicle. Doc. 6 at 7. Construing his Complaint liberally, Gunn's due process claim is treated as a Fourth and Fourteenth Amendment claim brought under 42 U.S.C. § 1983. A § 1983 claim based on the Fourth Amendment requires a plaintiff to demonstrate both that a search or seizure occurred and that the search or seizure was unreasonable. See Clark v. Clark, 926 F.3d 972, 977 (8th Cir. 2019) (citation omitted). Generally, "[t]he Fourth Amendment prohibits unreasonable searches and seizures that lack prior approval by a court." Butler v. City of Richfield, No. 14-281-ADM/SER, 2014 WL 4071956, at *4 (D. Minn. Aug. 18, 2014). Courts, however, "have recognized a few 'established and well-delineated exceptions' to this 'cardinal principle.'" Id. (quoting United States v. Kimhong Thi Le, 474 F.3d 511, 514 (8th Cir. 2007)). "One such exception is the 'community caretaking' function of the police." Id.; South Dakota v. Opperman, 428 U.S. 364, 368–69 (1976). "In the interests of public safety and as part of what the Court has called 'community caretaking functions,' automobiles are frequently taken into police custody." Opperman, 428 U.S. at 368 (internal citation omitted). Police will often remove vehicles from the side of highways or streets to protect public safety and "permit the uninterrupted flow of traffic." Id. at 368–69. "The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." Id. at 369.

As earlier stated, Gunn does not dispute that he was driving without visible license plates—a violation of SDCL § 32-5-98. And "[p]robable cause to conduct a traffic stop exists

when an officer has an objectively reasonable basis to believe the driver has committed a traffic violation." Mendez, 2022 WL 1165727, at *9 (citing Gordon, 741 F.3d at 876). Because Deputy Stearns had probable cause to initially seize Gunn, the traffic stop—as well as the impounding of his car—was not unreasonable under the Fourth Amendment.

In South Dakota, "[a] law enforcement officer may, without a warrant, arrest a person . . . [f]or a public offense, other than a petty offense, committed or attempted in his presence[.]" SDCL § 23A-3-2.

> Any police officer may remove or cause to be removed to the nearest garage or other place of safety any vehicle . . . when the person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before a judge or magistrate without unnecessary delay.

SDCL § 32-30-19.

Gunn's allegations, taken as true, do not state a claim for a Fourth Amendment violation. Deputy Stearns had probable cause to arrest Gunn for a class 2 misdemeanor, and South Dakota law authorized him to impound the vehicle rather than leave it on the side of the road. This action was a permissible exercise of the community caretaking function exception to the Fourth Amendment. Aside from disputing the legal basis for the stop and subsequent arrest, Gunn does not allege that Deputy Stearns abused his authority or engaged in any kind of wrongdoing, such as violating county policy.

Gunn further alleges that he was denied due process under the Fourteenth Amendment "when his personal vehicle was impounded . . . [and] *kept* from him for 111 days without due process of law." Doc. 6 at 9 (emphasis added). Under the Fourteenth Amendment, "a state may not authorize the deprivation of a protected liberty or property interest without providing a procedure in connection with that deprivation that meets the requirements of due process."

Ferebee v. Macklin, No. 22-1155, 2023 WL 4217624, at *5 (E.D. Pa. June 27, 2023) (quoting
Sample v. Diecks, 885 F.2d 1099, 1114 (3d Cir. 1989)).

      To show a due process violation under the Fourteenth Amendment, Gunn must prove (1)
the deprivation of a constitutionally protected liberty interest, and (2) the denial of adequate
procedural protections.  See Allen v. City of Kinloch, 763 F.2d 335, 336 (8th Cir. 1985) (stating
that due process only requires the plaintiff to "have had, at a meaningful time and in a
meaningful manner, an opportunity to challenge the seizure of his property").  For the purpose of
screening, this Court will assume that the impoundment of one's car deprives an individual "of a
property interest that may be taken from him only in accordance with the Due Process Clause."
Stypmann v. City & Cnty. of San Francisco, 557 F.2d 1338, 1342 (9th Cir. 1977).  "The
fundamental requirement of due process is the opportunity to be heard at a meaningful time and
in a meaningful manner."  Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (internal quotation
omitted).  When a party contests the adequacy of notice given by the government, courts must
instead determine whether the notice (if any) provided by the government was "reasonably
calculated, under all the circumstances, to apprise interested parties of the pendency of the action
and afford them an opportunity to present their objections . . . with due regard for the
practicalities and peculiarities of the case[.]"  Mullane v. Cent. Hanover Bank & Tr. Co., 339
U.S. 306, 314 (1950) (citations omitted).

      Here, Gunn essentially argues that he was entitled to pre-deprivation notice and a
hearing.  See Doc. 6 at 10 ("The Constitution requires due process 'prior' to seizure not 'when
the State gets around to it!"); Doc. 6 at 11 ("Norman has . . . a Due Process property right
requiring a minimum of 'notice, a hearing, and an impartial tribunal.'" (emphasis omitted)).
Although Gunn does not articulate what procedure he was afforded, he does argue that he was

14

entitled to notice and a pre-deprivation hearing under the Mathews test. Id. at 10. As such, Gunn's individual capacity due process claim against Deputy Stearns for money damages for pre-deprivation notice survives screening under 28 U.S.C. § 1915.

As for Gunn's claim that his vehicle has been retained in violation of his rights, some courts have employed the Fourteenth Amendment due process clause, not the Fourth Amendment, when analyzing claims for retention of property that has been validly seized. Hopkins v. City of Bloomington, No. 12-1943, 2013 WL 5406671, at *10 (D. Minn. Sept. 25, 2013) (collecting cases); see also Walters v. Wolf, 660 F.3d 307, 314 (8th Cir. 2011) (holding that a refusal to return validly seized property is a separate due process claim).

Gunn claims that "Deputy Kearns continued to maintain custody and control of [his] vehicle for 111 days without probable cause." Doc. 1 at 3. "Even after the Defendant Hoffman dismissed all charges in January 2024, the Sheriff's department refused to return [Gunn's] personal property." Id. Although it is unclear to what extent Deputy Stearns was responsible for Gunn not being provided his vehicle for 111 days and whether Gunn was provided any hearings related to the retention of his vehicle, Gunn has alleged that Deputy Stearns was somewhat involved with the continued retention of his vehicle. Id. Thus, Gunn's Fourteenth Amendment due process claim for retention of his vehicle against Deputy Stearns in his individual capacity for money damages survives § 1915 screening. Gunn does not allege that any other defendant was involved in the retention of his vehicle. If anything, Gunn's Complaint shows that SA Hoffman helped Gunn get his vehicle released from the impound lot. Thus, Gunn's Fourteenth Amendment claim for the continued impoundment of his vehicle against SA Hoffman and Judge Bucher fails to survive screening under 28 U.S.C. § 1915(e)(2)(B)(ii).

15

### iv.     Malicious Prosecution

A malicious prosecution claim is only cognizable under 42 U.S.C. § 1983 if the "alleged wrongful conduct . . . also infringe[d] some provision of the Constitution or federal law." Dunn v. Does 1–22, 116 F.4th 737, 751 (8th Cir. 2024) (alterations in original) (internal quotation omitted) (quoting Martin v. Julian, 18 F.4th 580, 584 (8th Cir. 2021)); see also Kurtz v. City of Shrewsbury, 245 F.3d 753, 758 (8th Cir. 2001) (noting that "malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury"). Gunn asserts malicious prosecution claims based on alleged violations of the Fourth and Fourteenth Amendments. A malicious prosecution claim alleging a Fourth Amendment violation is actionable under § 1983. Thompson v. Clark, 596 U.S. 36, 42 (2022). To state a claim of malicious prosecution under the Fourth Amendment, "[a] plaintiff must show that (1) the criminal proceeding was instituted without probable cause, (2) the defendant's motive in instituting the proceeding was malicious, and (3) the prosecution terminated in acquittal or discharge of the accused." Ramos v. Wemhoff, No. 8:23CV564, 2025 WL 841081, at *3 (D. Neb. Mar. 18, 2025) (alteration in original) (quoting Klein v. Steinkamp, 44 F.4th 1111, 1115 (8th Cir. 2022)). "[T]he gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges without probable cause." Id. (alterations in original) (quoting Thompson, 596 U.S. at 43). So long as a prosecutor was exercising a core prosecutorial function "intimately associated with the judicial phase of the criminal process," they are immune from suit. Imbler v. Pachtman, 424 U.S. 409, 430 (1976). That goes for initiating and prosecuting a criminal case. Id. at 431. All Gunn challenges is his being prosecuted. But SA Hoffman is immunized from suit for that reason.

16

Gunn's malicious prosecution claim against SA Hoffman relates back to his claim that Deputy Stearns lacked probable cause to execute the traffic stop and issue him a citation for failing to display license plates. As this Court discussed above, Gunn's contentions are incorrect; he does not contest that he violated the letter of the law, only that the law is unconstitutional. SA Hoffman's prosecution was based on the same probable cause that led Deputy Stearns to issue the traffic citation. Moreover, Gunn's Complaint alleges no facts showing that SA Hoffman initiated the proceedings based on a malicious motive. As such, Gunn's malicious prosecution claim fails screening under 28 U.S.C. § 1915(e)(2)(B)(ii) and shall be dismissed without prejudice.

### v.    Claim against Judge Bucher

When it came time for Gunn to enter his plea at his arraignment, he refused. So as required by the state rules, the judge entered a plea of not guilty. SDCL § 23A-7-2; cf. Fed. R. Crim. P. 11(a)(4) (federal analog). But to Gunn, the judge entering a not guilty plea on his behalf constitutes a deprivation of his civil rights.

Judicial immunity guards judges from suits brought under § 1983 for alleged deprivations of a plaintiff's civil rights in all but two narrow sets of circumstances. Schottel v. Young, 687 F.3d 370, 373 (8th Cir. 2012). Those circumstances are when the judge was not acting in their judicial capacity during the alleged deprivation, or when taken "in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 11–12 (1991). A judge taking a plea clearly fits neither category of exception. Thus, because judicial immunity bars recovery, Gunn's individual capacity claim against Judge Bucher is dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

### vi.  Civil Conspiracy

Gunn alleges a claim for civil conspiracy under 42 U.S.C. §§ 1983 as well as 1985(1), (2), and (3).  Doc. 1 at 1, 3.

A civil conspiracy claim under § 1983 requires that the plaintiff show: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." Livers v Schenck, 700 F.3d 340, 360–61 (8th Cir. 2012) (quoting In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 113 F.3d 1484, 1498 (8th Cir. 1997)).  Although circumstantial evidence may be used, a plaintiff must allege "specific facts tending to show" that defendants reached an agreement to deprive the plaintiff of a constitutional right or a meeting of the minds.  Murray v. Lene, 595 F.3d 868, 870 (8th Cir. 2010).  The plaintiff must also show that he has been deprived of a constitutional right or privilege.  White v. McKinley, 519 F.3d 806, 914 (8th Cir. 2008) (citing Askew v Millerd, 191 F.3d 953, 957 (8th Cir. 1999)).

"In order to state a claim for conspiracy under § 1985, a plaintiff 'must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement.'"  Kelly v. City of Omaha, 813 F.3d 1070, 1077–78 (8th Cir. 2016) (quoting City of Omaha Emps. Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989)).  A claim under § 1985(1) relates to a conspiracy to prevent any person from holding office or a conspiracy to interfere with an officer's duties of the office.  42 U.S.C. § 1985(1).  "The first phrase of § 1985(2) prohibits conspiracy 'to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein[.]'"  Ward v. United States Marshals, 5:23-CV-05061-CCT, 2025 WL 949242,

18

at *31 (D.S.D. Mar. 28, 2025) (alteration in original) (quoting 42 U.S.C. § 1985(2)).  To prevail

on a claim under the second phrase of § 1985(2), a plaintiff must show:

> 1) the defendants conspired; 2) for purposes of impeding, hindering, obstructing, or
> defeating in any manner the due course of justice; 3) with intent to deny a citizen
> of the equal protection of the law or injure him for lawfully enforcing, or attempting
> to enforce, the right of any person to the equal protection of the law.

Main St. Props. LLC v. City of Bellevue, 8:20CV278, 2021 WL 736711, at *5 (D. Neb. Feb. 25,

2021) (citing 42 U.S.C. § 1985(2)).  The elements for a conspiracy claim under § 1985(3) are:

> (1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to
> deprive her either directly or indirectly of her civil rights; (3) that a conspirator did
> an act in furtherance of the object of the conspiracy; and (4) damages, shown by
> demonstrating either injury to person or property or the deprivation of a civil right.

Mettler v. Whitledge, 165 F.3d 1197, 1206 (8th Cir. 1999).  In order to prevail on a claim under

the second phrase of § 1985(2) and under § 1985(3), the plaintiff must allege that the conspiracy

was fueled by "class-based, invidiously discriminatory animus."  Andrews v. Fowler, 98 F.3d

1069, 1079 (8th Cir. 1996) (quoting Bray v. Alexandria Women's Health Clinic, 506 U.S. 263,

268 (1993)); Harrison v. Springdale Water & Sewer Comm'n, 780 F.2d 1422, 1429 (8th Cir.

1986).

Here, Gunn generally claims the existence of a conspiracy, but he has not alleged any

facts indicating that the parties reached an agreement or had a meeting of the minds.  Doc. 1 at 3.

Gunn does claim that during a hearing SA Hoffman allegedly told Judge Bucher, "Don't worry

we'll get him the next time."  Id. at 2.  But he has not alleged any facts indicating that Judge

Bucher responded to SA Hoffman's statement, nor does he allege any facts indicating that the

parties reached an agreement on this matter or that a meeting of the minds occurred.  See

generally id.  Thus, Gunn has alleged insufficient facts to state a claim for conspiracy under 42

U.S.C. §§ 1983 and 1985(1), (2), and (3), and his civil conspiracy claim is dismissed without

19

prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C.

§ 1915(e)(2)(B)(ii).

### 2.    42 U.S.C. § 12203(a) Claim

In Gunn's complaint, he merely cites to "42 U.S. Code § 12203(a) – Prohibition of

Retaliation and Coercion" as a federal claim under which his suit arises. Doc. 1 at 1. He does

not explain how his claim falls under § 12203. See generally id. In his "memorandum of

authorities," he alleges that his rights under § 12203(a) were violated because the state court

"threatened [him] with contempt of court if he did not plead, but [he] continued to stand on his

Constitutional Rights. The [c]ourt entered a plea for [him]. A violation of **42 US Code**

**§ 12203(a).**" Doc. 6 at 2. He alleges that this action violated his rights because

> Under **§ 12203(a),** it is unlawful to 'Coerce, intimidate, threaten, or interfere with
> any individual in the exercise or enjoyment of their rights granted or protected by
> **42 U.S. Code § 1983** – Violation of Civil Rights, or Retaliate against any individual
> who opposes any act or practice made unlawful by this chapter, or who participates
> in an investigation, proceeding, or hearing under this chapter.

Id. at 9.

It appears that Gunn has combined the language from 42 U.S.C. § 12203(a) and (b). See

generally id. Under § 12203(a), "[n]o person shall discriminate against any individual because

such individual has opposed any act or practice made unlawful by this chapter or because such

individual made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). But § 12203(b) states:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual
> in the exercise or enjoyment of, or on account of his or her having exercised or
> enjoyed, or on account of his or her having aided or encouraged any other individual
> in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(b). Regardless of which section Gunn intends to reference, both sections

indicate that they apply to "this chapter," and "[t]he 'chapter' referenced in Section 12203 is the

Americans with Disabilities Act of 1990 (ADA)." Seaworth v. KLST, Inc., No. 20-2560, 2021 WL 2920677, at *2 (D. Minn. July 12, 2021).

The only section of the ADA that Gunn generally cites to is 42 U.S.C. § 12101. Doc. 1 at 4. "Section 12101 is simply a statement of the '[f]indings and purpose' behind the ADA; it provides no substantive causes of action." Glover v. Tigani, Civil No. 23-1504 (JRT/TNL), 2023 WL 4604505, at *7 (D. Minn. July 13, 2023) (alteration in original). Even if this Court were to liberally construe his claim as falling under Title II of the ADA, he would fail to state a claim upon which relief may be granted. Title II states that, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. But Gunn does not allege that he is disabled under the ADA. See generally Docs. 1, 6. Further, Gunn does not appear to allege that he was discriminated against because he opposed an act prohibited by the ADA or that he made a charge under the ADA, nor has he alleged that he was coerced, intimidated, threatened, or interfered with because he exercised a right under the ADA. Thus, Gunn has alleged insufficient facts to state a claim under 42 U.S.C. § 12203, and his claim under § 12203 is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3.   State-Law Claims

Gunn also alleges state-law claims under SDCL §§ 20-9-6 and 20-9-32. Doc. 1 at 2. Federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "[D]istrict courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form

part of the same case or controversy under Article III of the United States Constitution." 28

U.S.C. § 1367(a).

SDCL § 20-9-6 states:

Every person has, subject to the limitations provided by law, the right of protection
from bodily harm or restraint, from personal insult, from defamation, and from
injury to his personal relations, and every person is bound, without contract, to
abstain from injuring any such rights of others and to abstain from injuring the
person or property of another.

SDCL § 20-9-6. Gunn only mentions SDCL § 20-9-6 in the beginning of his complaint, and he

does not expound further about how his claim falls under SDCL § 20-9-6. Doc. 1 at 2. It

appears from Gunn's filings that he is merely attempting to assert a tort claim. Liberally

construing Gunn's complaint, he appears to allege a tort claim for malicious prosecution.

South Dakota law clearly defines the elements of a tort claim for malicious prosecution.

The six elements necessary to sustain an action for malicious prosecution are: (1)
the commencement or continuance of an original criminal or civil judicial
proceeding; (2) its legal causation by the present defendant against plaintiff, who
was defendant in the original proceeding; (3) its bona fide termination in favor of
the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the
presence of malice; and (6) damages conforming to legal standards resulting to
plaintiff.

Schwartz v. First Nat'l Bank, 390 N.W.2d 568, 571 (S.D. 1986) (quoting Weber v. W. Bank, 336

N.W.2d 652, 653 (S.D. 1983)). "In an action for malicious prosecution the court determines

whether a defendant had probable cause for initiating the proceedings, except when there is a

dispute over the circumstance under which the proceedings were initiated." Kaarup v. St. Paul

Fire & Marine Ins. Co., 485 N.W.2d 802, 805 (S.D. 1992) (citing Bucher v. Staley, 297 N.W.2d

802 (S.D. 1980)). As this Court already explained when analyzing Gunn's Fourth Amendment

malicious prosecution claim, he has not shown that the prosecution was devoid of probable

cause. See supra at 16–17. Thus, Gunn has failed to sufficiently allege a state-law tort claim for

22

malicious prosecution, and his malicious prosecution tort claim is dismissed without prejudice

under 28 U.S.C. § 1915(e)(2)(B)(ii).

> SDCL § 20-9-32 states:
>
> In addition to the criminal penalty provided in § 22-19B-1, there is a civil cause of action for malicious harassment. The victim of malicious intimidation or harassment may recover both special and general damages, including damages for emotional distress, reasonable attorney fees and costs, and punitive damages. The civil cause of action for malicious intimidation or harassment is in addition to any other remedies, criminal or civil, otherwise available under law.

SDCL § 20-9-32. SDCL § 22-19B-1 states:

> No person may maliciously and with the specific intent to intimidate or harass any person or specific group of persons because of that person's or group of persons' race, ethnicity, religion, ancestry, or national origin:
> (1)   Cause physical injury to another person; or
> (2)   Deface any real or personal property of another person; or
> (3)   Damage or destroy any real or personal property of another person; or
> (4)   Threaten, by word or act, to do the acts prohibited if there is reasonable cause to believe that any of the acts prohibited in subdivision (1), (2), or (3) of this section will occur.

SDCL § 22-19B-1. See also Sisney v. Best Inc., 754 N.W.2d 804, 812–13 (S.D. 2008) ("SDCL

20–9–32 provides a . . . civil cause of action for a violation of SDCL 22–19B–1."). SDCL § 22-

19B-1 clearly indicates that a person must have the specific intent to intimidate or harass because

of "race, ethnicity, religion, ancestry, or national origin." Id. In Gunn's Complaint, he has not

alleged any facts indicating that he was harassed because of his race, ethnicity, religion, ancestry,

or national origin. See generally Doc. 1. Thus, Gunn's SDCL § 20-9-32 claim is dismissed

without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C.

§ 1915(e)(2)(B)(ii).

## III.   Motion to Appoint Counsel

Gunn has also filed a motion to appoint counsel. Doc. 3. "A pro se litigant has no

statutory or constitutional right to have counsel appointed in a civil case." Stevens v. Redwing,

146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant, this Court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claims. Id. At this time, Gunn's claims do not appear to be complex, and he is able to investigate the facts and present his claims adequately. This Court believes that Gunn is capable of pursuing his claims pro se at this phase of litigation, and his motion to appoint counsel, Doc. 3, is denied at this time.

## IV. Conclusion

Accordingly, for these reasons, it is

ORDERED that Gunn's motion for leave to proceed in forma pauperis, Doc. 2, is granted. It is further

ORDERED that Gunn's claims against Judge Bucher in her official capacity for money damages are dismissed with prejudice under 28 U.S.C § 1915(e)(2)(B)(iii). It is further

ORDERED that Gunn's individual capacity due process claim for money damages against Deputy Stearns for pre-deprivation notice survives screening under 28 U.S.C. § 1915. It is further

ORDERED that Gunn's Fourteenth Amendment due process claim for retention of his vehicle against Deputy Stearns in his individual capacity for money damages survives § 1915 screening. It is further

ORDERED that Gunn's remaining claims are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii). It is further

ORDERED that Gunn's motion to appoint counsel, Doc. 3, is denied. It is further

24

ORDERED that the Clerk shall send a blank summons form and United States Marshals Service Form (Form USM-285) to Gunn so that he may complete the form to cause the complaint to be served upon Deputy Stearns. It is further

ORDERED that Gunn shall complete and send the Clerk of Court a summons and USM-285 form within **thirty days from the date of this Court's screening order**. Upon receipt of the completed summons and USM-285 form, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed without prejudice. It is further

ORDERED that the United States Marshals Service shall serve the completed summonses, together with a copy of the Complaint, Doc. 1, the Memorandum of Law, Doc. 6, and this Order upon Deputy Stearns. It is further

ORDERED that Defendant shall serve and file an answer or responsive pleading to the Complaint on or before 21 days following the date of service or 60 days if the Defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is finally

ORDERED that Gunn keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by this Court's Civil Local Rules while this case is pending.

DATED this 21 day of August, 2025.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE